PERCY R. TODD v. ELIZABETH S. LAKE, et al.

Western Section. July 31, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1928.

Taylor & Goodman, of Memphis, for appellant.

Wilson, Gates & Armstrong, and Byars, Swift & Sternberger, all of Memphis, for appellee.

SENTER, J. The complainant, Percy R. Todd, filed the original bill in this cause against the defendants seeking to recover on an account for materials and plumbing in a house owned by Mrs. Elizabeth S. Lake, totaling the sum of $607 for the materials furnished and labor performed; and to have a lien declared on the property for the materials and labor furnished thereon. The defendant, Mrs. Elizabeth S. Lake, in her answer, admitted that she was the owner of the residence. She denied that she was indebted to the complainant for the alleged account, and denied that he had a lien on the property as alleged in the bill; she denied that she entered into any contract with complainant for said plumbing, either through herself or through any authorized agent.

At the hearing of the cause the Chancellor denied the relief sought by the complainant and dismissed the bill at the cost of complainant. From this action of the court the complainant has appealed to this court. Several assignments of error are filed by appellant, but they may be considered and disposed of collectively.

The record discloses that the defendant, Mrs. Elizabeth S. Lake, is a resident of Chicago, Ill., and is the owner of certain real estate in Memphis, and among other property owned by her in Memphis are two houses and lots referred to in the record as Nos. 525 and 527 Beale Avenue. Churchill & Strother, engaged as rental agents in Memphis, had charge of this property for Mrs. Lake as the rental agents, and also to have repairs made to her property in Memphis when necessary, but not until Mrs. Lake, or her daughter who resides in Memphis, authorized the repairs, except in cases of emergency. These two houses had been vacant for some time, and had been broken into and the plumbing fixtures, water pipes, and other plumbing apparatus had been stolen from the houses. Mrs. Lake made occasional visits to Memphis, and was in Memphis the early part of October, 1925. Upon learning that the plumbing had been stolen from the houses she had Mr. H. W. Strother, of the firm of Churchill & Strother, to go with her to the houses to see what repairs would be necessary in order to place the same in condition where tenants could be procured. It appears that they found the property in bad repair, and especially where the plumbing had been torn out or cut out and stolen. It was necessary to have some

repair work done to the floors and the roof, and probably papering some of the rooms, as well as having the plumbing placed in good and proper condition for renting. There is a sharp conflict in the evidence between Mrs. Lake and her married daughter on the one side and Mr. H. W. Strother on the other, as to just what occurred in the conversation at the time they were all present at the house where the repairs were to be made. Mr. Strother states that Mrs. Lake agreed that the repairs would have to be made in order to procure a tenant, and admits that she did not want the plumbing restored until a tenant had been procured for fear that it would again be stolen. He states, however, that she agreed that as soon as he could procure a tenant for the property the plumbing would be repaired and put in condition. Mrs. Lake states that she told Mr. Strother at the time that she did not want the plumbing installed or repaired until the house was actually occupied by a tenant, and that she had arranged with a negro contractor to have all the repairs made, including the plumbing. Mrs. Lake testified that she saw the colored contractor, Barbee, and had him to look over the premises and that Barbee agreed to do all the repair work, including the plumbing, for $150, $75 of which was for repairing or restoring the plumbing.

Mrs. Lake left the city of Memphis, and her daughter also left the city of Memphis a few days thereafter, and Mr. Strother procured a tenant for the property and at once sought to get in communication with Mrs. Pruitt, Mrs. Lake's daughter, and she was out of the city of Memphis, and he then tried to get in communication with Dr. Pruitt, the son-in-law of Mrs. Lake, but failed to do so, and he then called several plumbers and finally called Mr. Todd, the complainant, the other plumbers upon whom he had called being so engaged that they could not give the matter of restoring the plumbing their immediate attention, and that he did not call on Mr. Todd until he had called on other plumbers. He went with Mr. Todd to the premises and Mr. Todd agreed to promptly repair or restore the plumbing so that it would be ready for the tenants at the time they had engaged to enter as tenants. Mr. Strother did not make any agreement with complainant as to the price to be charged, except that the complainant would furnish the necessary materials and would charge the customary price for the same and would charge for the number of hours that the plumber and an assistant would be required to do the work. Mr. Todd states that it could not be told at the time just the extent of plumbing necessary, and that even after Todd and finished the work and the tenants had moved in he discovered other defects, especially in the plumbing in the basement, that would have to be attended to

and had Todd to do this. This by explanation of his failure to have an amount agreed upon for all the work to be done for restoring the plumbing.

The Chancellor under the fifth item of his finding of the facts, states as follows:

"Fifth. There is a conflict in the testimony about instructions given by Mrs. Lake to Strother with reference to having this plumbing installed. Strother says that at the time he and Mrs. Lake and Mrs. Pruitt examined the premises, Mrs. Lake told him not to have the plumbing installed until he secured tenants and he says that as soon as he secured leases from tenants, he at once ordered Todd to replace the plumbing fixtures. Mrs. Lake and Mrs. Pruitt say positively that they did not tell Strother to have the plumbing done but that they told him to notify Mrs. Pruitt by phone as soon as he secured a tenant, and that Mrs. Pruitt would then have it done.

"The weight of the testimony on this matter is with the defendant. Against the testimony of Strother, we have the testimony of both Mrs. Lake and Mrs. Pruitt, both of whom testify positively that Mrs. Pruitt was to have the work done as soon as Strother notified her that he had secured tenants. Moreover, Mrs. Lake had arranged with Barbee to install the plumbing and to make certain other necessary repairs whenever Mrs. Pruitt told him to do so. In addition to this Mr. and Mrs. Lake had complained to Strother about Todd's charges for other work which he had done on the premises and had notified him not to employ Todd to do any other work for the reason that they considered his charges were excessive. The correspondence in the file shows that Strother never made any considerable expenditures for repairs without express authority from Mrs. Lake or Mr. Lake, or their daughter, Mrs. Pruitt. However, he did have authority to make minor repairs when an emergency arose, and no question was made of such expenditures. He had never before incurred such an expense as Todd's bill in this case, without express authority, and I have no doubt that in this instance Strother understood that Mrs. Lake wanted him to have the plumbing installed as soon as he got tenants for the property. As already stated, however, the proof sustained Mrs. Lake's contention that he was to notify Mrs. Pruitt when he secured tenants and Mrs. Pruitt would then have Barbee make the necessary repairs. Mrs. Lake first learned from Barbee that Todd had installed these plumbing fixtures. She went immediately to Strother and protested and told him that she would not pay Todd's bill. She did this before she knew what Todd charged for the work."

We fully concur in so much of the finding of the facts as found by the Chancellor, which states in substance that Strother, as the rental agent of Mrs. Lake, had been authorized to have minor repairs and other repairs made on her property from time to time. And also the further finding that in this instance "Strother understood that Mrs. Lake wanted him to have the plumbing installed as soon as he got tenants for the property."

The learned Chancellor further found as a fact under Item Six as follows:

"Sixth. From this proof I find the fact to be, that Mrs. Lake had arranged with Barbee to do this plumbing and make the other necessary repairs as soon as Strother notified Mrs. Pruitt that he had secured a tenant."

The Chancellor then adds: "That, therefore, she did not authorize Strother to employ Todd to make these repairs and replacements," and upon this finding the Chancellor dismissed the bill of complainant at the cost of complainant.

While there is a decided conflict in the record as to just what specific instructions Mrs. Lake gave to Strother with reference to having the repairs made after a tenant was procured, it may be said that the Chancellor reached the correct conclusion in finding that a preponderance of the evidence was to the effect that Strother's instructions from Mrs. Lake, after procuring a tenant, were to notify her daughter, Mrs. Pruitt so that Mrs. Pruitt could proceed to have the repairs made. However, the Chancellor also finds, and we think correctly, that Strother understood that as soon as he could procure a tenant he would have the repairs made and the plumbing installed. It may be conceded that Strother's instructions with reference to this particular repair job were limited, and that he was not instructed to have the repairs made until after a tenant was procured and Mrs. Pruitt notified. However this may be, the fact remains that Strother had procured Todd to do a considerable amount of plumbing on the property of Mrs. Lake during the past several years. It may also be true that Mrs. Lake had complained to Strother that Todd's charges for work in the past was excessive and that she did not desire him to do any more work for her or on her property. Strother states that Mrs. Lake did not only complain at the cost or expense of repairs made by Todd, but had complained of the charges made by other mechanics. Whatever instructions may have been given by Mrs. Lake to Strother with reference to this particular transaction, we think it abundantly appears from the record that she had held Strother out to the public as her agent authorized by her to rent her property and to keep the same in repair. He had contracted repair bills on numerous oc-

casions for repairs for her property and had paid for same out of revenues collected from the property in the way of rent, and that Mrs. Lake had settled for the same.

Conceding that Strother in the instant case exceeded his instructions and specific authority to have this plumbing done, the question is then presented by certain of the assignments of error of appellant, that Strother was acting within the apparent scope of his agency and that complainant, Todd, was warranted in assuming that Strother was acting within the scope of his agency in procuring him to do this plumbing work.

The only answer which appellee makes to this is, that when Todd went to the premises with Strother Barbee was there at work, and that in a few days when Todd sent his men to do this work they found Barbee there on the premises and this was knowledge to Todd that Mrs. Lake had procured someone else to do the work.

On this question the record discloses that when Strother first went to the premises with Todd to see about having the plumbing replaced and repaired, that there was a man in the house engaged in either taking paper off of the wall or in preparing to paper the walls of the rooms; that he did not pay any attention to him and did not even observe whether he was a white or a colored man. If this man was in fact Barbee, he was not engaged in any plumbing work at that time, and Todd did not say anything to him. Certainly there was nothing in this incident to put Todd on notice that Mrs. Lake had procured another plumber to do the plumbing. The record discloses from the evidence of Barbee that some days later when Todd's workmen went to the premises to do the plumbing they told Barbee that they were there to do the plumbing, and Barbee left the premises. It is nowhere shown that Barbee told either Todd or Todd's workmen that he had contracted with Mrs. Lake to do the plumbing work.

The record does not disclose that Todd ever had any notice that she had instructed Strother not to employ him ·to do any more work on her property. As above stated Strother admits that Mrs. Lake did complain to him of the charges made by Todd for other work done on her property, but he states that she also complained of the amount of charges made by other mechanics.

Strother testified that when he procured the tenant Mrs. Pruitt was not in the city, Mrs. Lake was not in the city, and he could not get in communication with Dr. Pruitt, and knowing the importance of having the plumbing placed in condition promptly, he tried to procure other plumbers and could not do so, and then took the matter up with Todd as above set forth. The Chancellor does not find as a fact that Todd's charges for the materials and work furnished on this job, considering the quality of materials used and

labor employed, was excessive. There is no evidence in the record that Todd's charges for materials and labor done were excessive, and the only evidence on this question is the evidence of Todd himself, and the itemized statement rendered by him, and in which each item is charged as well as the number of hours put in on the job. If this material and the charges therefor, and the labor done, were excessive, it certainly could have been so shown by the defendant, Mrs. Lake. It is evident from the cross-examination of the colored contractor, Barbee, that he did not make any estimate as to' the amount or kinds of materials which went into the job. According to the evidence of Mr. Strother this estimate could hardly have been made in advance, because they discovered even after Todd thought he had finished the work, that there were other defects which had not been discovered and which had to be repaired or replaced.

Another significant fact appears from a stipulation made by counsel that if Strother's deposition should be retaken, he would testify that he was still employed by Mrs. Lake as her agent at the time the case was being prepared for trial, and even after Strother had already testified. This is significant in that it discloses that if Strother had acted in bad faith, and had exceeded his authority and as a result of which Mrs. Lake had sustained so great a loss in this plumbing bill that she would continue him as her agent to look after her property in Memphis.

Another significant fact that is uncontradicted in this record, that in the statement rendered by Strother to Mrs. Lake for the month of October, 1925, there appears numerous items of expense and materials bought and used by Strother and charged up in the statement to Mrs. Lake and among which may be mentioned an item to the Clinton Lumber Co. of $44.04; Corliss-Seabrock Paint Co., $35.06; Sterling Paint Co., $9.02; J. N. Gray, tinner, $12, and numerous other items, and also the account of complainant of $607, and this is the only item about which Mrs. Lake makes any question, and the only one she refused to pay. This strongly corroborates the contention of appellant, that Mrs. Lake recognized the right and authority of Strother to incur the other items of expense in repairing her property, and that she objects to paying complainant's claim solely on the ground that it is considerably more than she expected to pay for the plumbing.

We are of the opinion that even under the finding of the facts as found by the Chancellor, Strother was acting within the scope of his apparent agency and authority in procuring Todd to do this plumbing. If he was acting within the apparent scope of his authority, and had on other occasions procured Todd to do plumbing work on Mrs. Lake's property, and the bills had been paid, he was

certainly warranted in assuming that Strother was acting within his authority in procuring him to do this work. It is also clear that Strother himself thought and understood that in the situation and circumstances, considering that both Mrs. Lake and Mrs. Pruitt were out of the city of Memphis, and Dr. Pruitt could not be located, and he having procured a tenant for immediate occupancy, that he was acting within the scope of his agency in procuring Todd to do this work.

In this view of the case the assignment of error on the question of apparent authority, is sustained.

It appears from the pleadings that there was an encumbrance of about $4000 on the property at the time complainant did this work and furnished the materials, and that the lien which he claimed should be subject to the prior encumbrance.

We are of the opinion that the learned Chancellor was in error in dismissing complainant's bill and taxing the cost of the cause to complainant. We are of the opinion that the employment by Strother to do this work by Todd was at least within the apparent scope of his agency and authority and binding upon the defendant, Mrs. Lake.

It results that complainant is entitled to recover of the defendant, Mrs. Elizabeth S. Lake, the amount of the account sued on, $607, with interest thereon from the date of the filing of the bill, and to have a lien declared on the property subject to the prior encumbrance indebtedness thereon. The decree of the Chancellor is reversed, and the cause is remanded to the chancery court of Shelby county for the enforcement of the lien of complainant for the materials furnished and labor performed as prayed for in the bill, but subject to the prior encumbrance indebtedness thereon. The cost of this appeal and the cost of the cause will be paid by the defendant, Mrs. Elizabeth S. Lake.

Owen and Heiskell, JJ., concur.